**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MISS TIFFANY MCCALL,<br>*Plaintiff,*<br>v.<br>NEMOURS CHILDREN'S HOSPITAL and DENAE SWEENY,<br>*Defendants.* | CIVIL ACTION<br>NO. 25-1162 |

**Pappert, J.** **October 13, 2026**

**MEMORANDUM**

Miss Tiffany McCall sued Nemours Children's Hospital and Denae Sweeny, a former employee of the Montgomery County Office of Children and Youth Services, alleging deprivation of McCall's parental rights under the Fourteenth Amendment after Nemours took emergency medical custody and performed a blood transfusion on McCall's son, allegedly against her wishes. McCall never served Sweeny, and Nemours moved for summary judgment. The Court grants the motion after thoroughly reviewing the record.

I

A

McCall brought her minor child, a 9-year-old boy with autism, to Nemours Children's Hospital in Wilmington, Delaware on February 28, 2023. (Ex. 1 to Def.'s Mot. Summ. J. 1118, 1181, 1928, Dkt. No. 25.) He was admitted to the hospital with, among other things, severe malnutrition, diarrhea, abdominal pain and a fever and had "lost over 25% of his body weight since November." (*Id.* at 50, 1118.) The boy was "at

high risk for refeeding syndrome" and required monitoring "before diagnostic endoscopic procedures" could begin. (*Id.* at 50.)

After admitting him to the hospital, the doctors at Nemours told McCall that, because the child was "severely anemic," they needed to perform a blood transfusion in order to proceed with diagnostic endoscopy and colonoscopy procedures. (*Id.* at 1127.) Nemours states that McCall "signed a 'medical document' consenting to blood transfusion" for her son, (Def.'s Statement of Undisputed Material Facts ¶ 6, Dkt. No. 24-2); however, McCall claims she was "forced and coerced into signing a medical consent form," (Pl.'s Reply to Def.'s Mot. Summ. J. ¶ 1, Dkt. No. 26; *see* Def.'s Ex. 1 at 1914–15). Medical records indicate that McCall "initially understood the need for the blood infusion, clean out and scope and signed a consent form for [her son] to receive blood but later revoked this consent." (Def.'s Ex. 1 at 1342.)

Nursing progress notes reported that the medical team discussed with McCall that her child's "hemoglobin was critically low" and that he required a blood transfusion, to which she stated, "I refuse the blood transfusion because I do not want my child to get AIDs from someone else's blood inside of him," and repeatedly requested her son's discharge despite being told that his condition would make discharge unsafe. (*Id.* at 1324.) She alleges the blood transfusion was against her "spirituality/religious beliefs." (Second Am. Compl. at 4, Dkt. No. 10.) The medical team tried to explain the "medical importance" of the planned care, telling McCall the child "will not get better without medical treatment and will continue to severely medically decline," but she declined consent to the blood transfusion. (Def.'s Ex. 1 at 1325; *see also* Def.'s Statement of Undisputed Material Facts ¶¶ 7–8.) McCall denies the necessity of the

transfusion but states that she was informed that "her child's hemoglobin level was too low to have the colonoscopy and endoscopy" performed. (Pl.'s Reply at ¶ 2.) However, she claims "[t]here was never an emergent situation that required [her] child to receive an emergency blood transfusion." (*Id.* at ¶ 4.)

On February 28, 2023, Dr. Laura Stanfel, MD, called Delaware Family Services to report "medical neglect of [McCall's] child due to continued concern that [McCall] is not allowing . . . medically necessary interventions and diagnostic work up." (*Id.* at 1187, 1333, 1339.) Her report noted that a similar complaint was made in the past month when McCall's son was a patient at CHOP. (*Id.* at 983, 1333.)

On March 1, 2023, Nemours made a report to Pennsylvania Children & Youth Services, took emergency custody of McCall's son and performed the blood transfusion, citing his "imminent risk of permanent harm." (*Id.* at 1115, 1326, 1348–49.) The next day, the Montgomery County Office of Children and Youth Services informed Nemours that, after an emergency hearing, MCOCYS took emergency custody and granted consent to perform any medically necessary interventions. (*Id.* at 1321–22, 1348.) A March 2 physician's note stated the hospital had received surgical consent from the state and that the endoscopy was an "emergency and necessary for his health and in order to determine the etiology on his symptoms;" the findings from the scopes were consistent with ileocolonic Crohn's disease (*Id.* at 1123–24, 1187.)

McCall's son was discharged on March 16, 2023. (*Id.* at 1120.) The physician discharge summary noted that he had "required blood transfusion prior to obtained endoscopy and colonoscopy for evaluation of IBD." (*Id.*) The summary also noted that, because McCall "repeatedly declin[ed] medically necessary interventions like blood

transfusions, scopes, and any other medications to help manage symptoms, Nemours took emergency custody on 3/1, [and] PA CYS subsequently took custody. [McCall was] removed from hospital from 3/7-3/9 due to violation of court ordered behavioral contract." (*Id.*) Final diagnosis notes included "[c]hild neglect or abandonment, suspected, initial encounter" and "[c]aregiver's noncompliance with patient's other medical treatment and regimen." (*Id.* at 1118–19.)

B

McCall filed her initial complaint against Nemours on March 4, 2025, (Dkt. No. 2), which was dismissed without prejudice, (Dkt. Nos. 5, 6). She filed her first amended complaint against Nemours and MCOCYS on June 19, 2025. (Dkt. No. 7.) The Court dismissed all claims against MCOCYS with prejudice and again allowed amendment. (Dkt. Nos. 8, 9.) McCall filed a second amended complaint against Nemours and, for the first time, MCOCYS employee Denae Sweeny, on October 24, 2025.[1] (Dkt. No. 10.) McCall alleged Nemours and Sweeny "deprived her of her parental rights and her right to decide medical treatment for her child." (*Id.* at 2.)

II

Federal Rule of Civil Procedure 56 directs a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This language compels summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

[1] The Second Amended Complaint also tried to reassert claims against MCOCYS, but they were again dismissed with prejudice. (Dkt. No. 11.) According to her Verification of Service filed on March 25, 2026, McCall has not served Denae Sweeny. (Dkt. No. 22.)

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A nonmoving party has not made that sort of showing if "the record taken as a whole could not lead a rational trier of fact to find" in the party's favor. *Ricci v. DeStefano*, 577 U.S. 557, 586 (2009) (citation omitted).

Only a factual dispute that is both material and genuine can defeat a properly supported summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A material fact is one that "might affect the outcome of the suit" under the governing law." *Id.* at 248. A dispute over a material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Here, McCall must identify "specific facts, as opposed to general allegations," in response to Nemours' motion. 10A *Wright & Miller's Federal Practice & Procedure* § 2727.2 (4th ed. 2026). She may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

At the summary judgment stage, the Court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In doing so, the Court construes the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.,* 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

III

Nemours first argues that McCall's claim is time-barred[2] and, in the alternative, that Nemours (1) is not a government actor, (2) acted to advance her child's well-being and (3) is immune from civil liability. (Def.'s Mot. for Summ. J. 1–2, Dkt. No. 24.)

A

There is a two-year statute of limitations for McCall's Fourteenth Amendment claim. *Cowell v. Palmer Tp.*, 263 F.3d 286, 291 (3d Cir. 2001). The limitations period begins to run when the plaintiff knew or should have known about the injury that forms the basis for her claim. *Sameric Corp. of Delaware v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). An action filed outside the two-year period is untimely unless the continuing violations doctrine applies, under which courts will grant relief for earlier related acts that would otherwise be time-barred where a defendant's conduct is part of a continuing practice and the last act evidencing the continuing practice is within the limitations period. *Cowell*, 263 F.3d at 292.

McCall filed her first complaint on March 4, 2025. (Dkt. No. 2.) She alleges in her Second Amended Complaint that the incidents upon which she bases her claim took place in late February and early March of 2023. (Second Am. Compl. at 4.) Nemours asserts—and McCall does not dispute—that Dr. Laura Stanfel called DFS on February 28, 2023, Nemours made a report to PA CYS and took emergency custody on March 1, 2023, and MCOCYS obtained emergency custody and granted consent to perform necessary medical interventions on March 2, 2023. (Def.'s Statement of Undisputed

[2] Nemours raised the statute of limitations as an affirmative defense in their Answer filed March 11, 2026. (Ans. at 6, Dkt. No. 19.)

Facts ¶¶ 10–12.) In responding to Nemours' motion, McCall attached an email from Sweeny dated March 1, 2023, informing her that Nemours took custody of her child that morning. (Pl.'s Ex. A, Dkt. No. 26-1.) However, McCall also alleged that hospital staff told her to "leave the hospital for a couple of days;" and the hospital records included a note from March 10, 2023, that "mom has been frequently req'd to leave due to escalating behavior." (Second Am. Compl. at 4, Dkt. No. 24-3; Def's Ex. 1 at 1226.) There is thus a question of fact as to whether at least some of the complained-of conduct took place after March 4, 2023.

IV

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. Section 1983 provides a civil remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018) (quoting *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005)). It is unclear whether McCall asserts a substantive or procedural due process claim, so the Court will analyze the merits of both.

To assert either claim, the plaintiff must show that the defendant was a state actor or acting under the color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) (explaining that state action is a "threshold issue" for § 1983 claims). Whether a defendant is a state actor depends on if

there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *McCall*, 2025 WL 1449260, at *2. State action exists where (1) the private entity has exercised powers that are traditionally the exclusive prerogative of the state, (2) the private party has acted with the help of or in concert with state officials and (3) the "state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Id.* (quoting *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)).

The medical records show that Dr. Laura Stanfel, MD, called Delaware Family Services on the night of February 28, 2023, to report medical neglect stemming from McCall's refusal to allow the blood transfusion. (*See e.g.*, Def.'s Ex. 1 at 1321, 1333, 1339.) The records then show that Nemours contacted PA CYS. (*Id.* at 1321.) McCall provided an email from Sweeny which stated that Nemours had taken custody of her son on the morning of March 1, 2023. (Pl.'s Ex. A.) Social work progress notes from March 2, 2023, describe a meeting attended by members of Nemours' staff and MCOCYS, including Sweeny, to discuss McCall's son where they determined MCOCYS would seek emergency custody with the court. (Def.'s Ex. at 1321.) MCOCYS submitted the court documents on March 2, 2023, and Nemours was given a court emergency custody order that gave MCOCYS emergency custody. (*Id.*) MCOCYS then gave the Nemours medical team consent to perform necessary treatments and interventions. (*Id.*) Several members of the Nemours medical team were present when Sweeny told McCall that MCOCYS was granted emergency custody. (*Id.*) The record

thus presents issues of fact for a jury as to whether Nemours acted with the help of or in concert with state officials from MCOCYS.

A

To establish a substantive due process claim, a plaintiff must identify a fundamental liberty interest protected under the Due Process Clause and show how "the government's deprivation of that protected interest shocks the conscience." *O'Bryant v. New Jersey Div. of Child Prot. & Permanency*, No. 23-1950, 2026 WL 2728461, at *9 (3d Cir. Sept. 16, 2026) (quoting *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)); *Crawford*, 353 F. App'x at 730 (noting that a substantive due process violation only occurs where the conduct was so clearly arbitrary that it shocks the conscience (citing *Miller v. City of Phila.,* 174 F.3d 368, 376 (3d Cir.1999))).

Parents have a fundamental liberty interest under the Fourteenth Amendment "in the care, custody, and management of their child." *Id.* (quoting *Santosky v. Kramer*, 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). That interest, however, is not absolute and "is limited by the compelling government interest in the protection of children—particularly where the children need to be protected from their own parents." *Id.* (quoting *Croft v. Westmoreland Cnty. Child. & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997)). Ultimately, "the best interests of the child are paramount," and parental rights "may be outweighed by the state and societal interests in preserving the well-being of the child" where "the exercise of that right would potentially endanger the health or well-being of the child." *Walker v. Johnson*, 891 F. Supp. 1040, 1048–49 (M.D. Pa. 1995) (citing *Jehovah's Witnesses v. King Cnty. Hosp.,* 278 F. Supp. 488, 504 (W.D.

Wash. 1967) (state may intervene in parents' religiously motivated decision refusing a blood transfusion for their child), *aff'd,* 390 U.S. 598 (1968) (*per curiam*)).

McCall's son's medical records show that the child was admitted to the hospital with, among other things, severe malnutrition, diarrhea, abdominal pain, vomiting and a fever and that he was anemic and had "lost over 25% of his body weight since November." (Def.'s Ex. 1 at 50, 1118, 1328.) The records describe throughout how the medical team told McCall they needed to perform the colonoscopy and endoscopy to diagnose her son and provide the proper treatment but that they were only able to perform them safely if he received a blood transfusion. (*See, e.g.*, *id.* at 983, 1323–26, 1328, 1333, 1339, 1341–42.) The medical team told McCall her son was not stable enough to be discharged safely, and the records stated that CHOP had previously filed a similar report. (*Id.* at 983, 1324.) At numerous points, Nemours raised concerns about suspected medical neglect leading to their decision to take emergency custody and contact the child protective services agencies. (*See e.g.*, *id.* at 983, 1325, 1328, 1333, 1349.) The records show, beyond a dispute, the blood transfusion was necessary. Thus, the medical team's subsequent actions did not constitute a deprivation of McCall's parental rights, much less one that "shocks the conscience," and McCall's bald assertion denying the blood transfusion's necessity cannot defeat Nemours' motion for summary judgment. *Crawford*, 353 F. App'x at 730 (holding that defendant's application for termination of parental rights was supported by evaluations by several specialists as well as evidence that the family home was deficient, and the parents' "[b]ald assertions to the contrary" were insufficient to defeat motion for summary judgment).

B

To establish a procedural due process claim, a plaintiff must show that they were deprived of an individual interest and denied due process of law. *O'Bryant*, 2026 WL 2728461, at *12 (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006)). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Ferris v. Milton S. Hershey Med. Ctr.*, 701 F. App'x 91, 96 (3d Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

Procedural due process requires, at the very least, notice and a hearing. *O'Bryant*, 2026 WL 2728461, at *12 (quoting *Wilson v. MVM, Inc.*, 475 F.3d 166, 178 (3d Cir. 2007)). But where an emergency situation "poses an imminent risk to the safety of a child, that child may be removed from custody with concerns of procedural due process coming afterward." *Ferris*, 701 F. App'x at 96 (citing *Goss v. Lopez*, 419 U.S. 565, 582–83 (1975)); *see O'Bryant*, 2026 WL 2728461, at *12 ("The temporary removal of children from their parents can occur without a pre-deprivation hearing only when swift action is necessary for securing the children's safety."). In other words, parents are not always entitled to process before their child is removed from their custody when their child's safety is threatened. *Ferris v. Milton S. Hershey Med. Ctr.*, No. 1:12-CV-0442, 2016 WL 5462088, at *11–12 (M.D. Pa. Sept. 29, 2016) ("Courts agree that 'in emergency circumstances which pose an immediate threat to the safety of

a child, officials may temporarily deprive a parent of custody without parental consent or court order.'" (quoting *Patterson v. Armstrong Cnty. Children and Youth Servs.*, 141 F. Supp. 2d 512, 530–31 (W.D. Pa. 2001))).

The record evidence shows McCall's son's safety was at risk, and she cannot defeat Nemours' motion by baldly claiming there was no medical necessity motivating the blood transfusion. As previously described, McCall's son presented with a litany of symptoms, the source of which the medical team needed to diagnose to provide him with the proper treatment, and he was not in a condition where he could be safely discharged. (*See e.g.*, Def.'s Ex. 1 at 50, 1120, 1324, 1333.) Moreover, the state court quickly authorized the temporary removal of McCall's son, granting MCOCYS custody a day after Nemours took emergency custody. (*See e.g.*, *Id.* at 1187, 1224, 1306, 1321.) *See Ferris v. Molton S. Hershey Med. Ctr.*, 701 F. App'x at 96 (finding no due process violation where "the state court expeditiously authorized the temporary removal of [the minor] from her parents' custody, indeed, within a half hour of the police's seizure"). McCall's son was discharged to her care, and the medical records indicate there were subsequent court proceedings on the matter. (*See e.g.*, Def.'s Ex. 1 at 1041–42, 1187, 1210, 1286, 1306.)

No reasonable jury could find that McCall was deprived of her parental rights in violation of the Fourteenth Amendment.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.